UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD MACKEY, an independent executor of the estate of REGINA POMIAN, deceased, <br><br> Plaintiff, <br><br> v. <br><br> TOWER HILL REHABILITATION, LLC, an Illinois limited liability company d/b/a TOWER HILL HEALTHCARE CENTER, <br><br> Defendant. | No. 21 C 2608 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Regina Pomian, a 95-year-old resident of a nursing home, died of COVID-19 on May 4, 2020. In a lawsuit filed in state court, Howard Mackey ("Plaintiff"), as executor of her estate, alleges that Pomian's death was a result of the nursing home's gross negligence. The nursing home operator, Tower Hill Rehabilitation, LLC, an Illinois limited liability company doing business as Tower Hill Healthcare Center ("Defendant" or "Tower Hill"), removed the case to federal court. *See* 28 U.S.C. §§ 1441(a), 1446(a). As its basis for removal, Tower Hill invoked the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act"), which Defendant argues completely preempts Plaintiff's state-law claims and provides federal question jurisdiction. *See* 28 U.S.C. § 1331. Alternatively, Defendant invokes the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). Plaintiff now moves to remand [13] for lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c). As explained here, the motion is granted.

## BACKGROUND

At this stage of the proceedings, the court accepts the allegations in Plaintiff's Complaint as true. Regina Pomian resided in a long-term care facility known as Tower Hill Healthcare Center, located in South Elgin, Illinois, from approximately May 2016 through May 2020. (Compl., Ex. A to Notice of Removal [1-1] ¶ 6.) According to Mackey, Tower Hill failed to respond

adequately to the COVID-19 pandemic, resulting in Pomian's untimely death on May 4, 2020. (*Id*. ¶ 102.) Among other things, Tower Hill allegedly failed to follow guidance from the Centers for Medicare and Medicaid Services ("CMS") and the Centers for Disease Control ("CDC") to mitigate the spread of COVID-19, failed to provide its staff with essential personal protective equipment ("PPE"), failed to test Pomian for COVID-19 despite knowing that she was ill, and failed to isolate her or provide her with PPE. (*See id*. ¶¶ 94–107.) Mackey alleges that Defendant consciously disregarded the health and safety of its residents in violation of the Illinois Nursing Home Care Act ("INHCA"), 210 ILCS 45/1-101 *et seq*. (*Id*. at 1–2.)

Plaintiff filed a complaint in state court on April 5, 2021, bringing various state-law claims against Tower Hill. *See Mackey v. Tower Hill Rehab., LLC*, No. 21 L 169. Count I alleges negligence under the INHCA; Count II alleges a willful and wanton violation of the INHCA; Count III alleges common law negligence; Count IV alleges negligence under the Illinois Wrongful Death Act ("IWDA"), 740 ILCS 180/1 *et seq*.; Count V alleges willful and wanton common law negligence; and Count VI alleges willful and wanton violation of the IWDA. (Compl. at 17–74.) Defendant timely removed the case on May 14, 2021, which was within thirty days of being served on or about April 15, 2021. (Notice of Removal [1] ¶ 2 (citing 28 U.S.C. § 1446(b).) Plaintiff subsequently filed a motion to remand the case to the Sixteenth Judicial Circuit in Kane County, Illinois for lack of subject-matter jurisdiction. (Mot. to Remand [13] ¶ 1.)

## **LEGAL STANDARD**

A defendant may remove any civil action filed in state court that could have been properly brought in federal court under federal question jurisdiction, *see* 28 U.S.C. § 1441(a), diversity jurisdiction (subject to certain limitations), *see id*. § 1441(b), or another statutory grant of jurisdiction, *see, e.g.*, *id*. § 1442(a)(1). "The party seeking removal has the burden of establishing federal jurisdiction[.]" *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Seventh Circuit has cautioned that "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Id*. A plaintiff

opposing removal may move to remand the case to state court. See 28 U.S.C. § 1447(c). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." *Id*. (emphasis added); see *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013).

## DISCUSSION

Defendant makes two arguments in support of removal. First, Defendant seeks removal under § 1441(a), contending that the PREP Act supplies federal question jurisdiction, either through the complete preemption doctrine or because Plaintiff's state-law claims necessarily raise a substantial federal issue. See 28 U.S.C. § 1331; *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Second, Defendant argues that it qualifies for removal under the federal officer removal statute. See 28 U.S.C. § 1442(a)(1). The court rejects both arguments.

I.    **Removal Based on Federal Question Jurisdiction**

    **A. Complete Preemption Under the PREP Act**

Under the well-pleaded complaint rule, federal question "jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiffs "may avoid federal jurisdiction by exclusive reliance on state law." *Id*. It is well settled that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id*. at 393. Thus, when a federal statute supersedes state law, ordinary preemption operates as an affirmative defense— not as an independent basis for federal jurisdiction. *See, e.g.*, *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013), *as amended* (Apr. 29, 2013); *see also Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 811 (7th Cir. 2018) (explaining the difference between express preemption, implied preemption, and conflict preemption).

The complete-preemption doctrine, however, provides a "narrow exception" to the well-pleaded complaint rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 5 (2003). "When [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. at 8. Federal law completely preempts state law claims only where there is "congressional intent . . . not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court *by transforming the state cause of action into a federal cause of action.*" *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002) (citation omitted). In other words, "complete preemption can only exist where, *inter alia,* the federal statute provides a private right of action." *Id.* at 790. To date, the Supreme Court has recognized only three federal statutes as completely preemptive: § 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act ("ERISA"), and §§ 85 and 86 of the National Bank Act. *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) (citing *Beneficial Nat'l Bank*, 539 U.S. at 7–11).[1] "[A]ny further expansion of the doctrine . . . requires a clear showing of Congressional intent to eliminate state law entirely." *Ne. Rural Elec. Membership Corp.*, 707 F.3d at 894.

The PREP Act, enacted in 2005, immunizes providers of "covered countermeasures" from liability during a public health emergency. Examples of a "covered countermeasure" include a drug, biological product, "respiratory protective device," "qualified pandemic or epidemic product," or "security countermeasure." 42 U.S.C. § 247d-6d(i)(1). The Act states that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss *caused by, arising out of, relating to, or resulting from the administration to or the use by an*

---

[1] Courts of appeals have recognized additional statutes as completely preemptive. *See, e.g.*, *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 989–90 (7th Cir. 2000) (finding removal jurisdiction over state-law claims based on complete preemption under a section of the Federal Communications Act); *In re WTC Disaster Site*, 414 F.3d 352, 375–80 (2d Cir. 2005) (concluding that the Air Transportation Safety and System Stabilization Act of 2001 completely preempts at least some state-law claims).

4

*individual of a covered countermeasure* if a declaration [by the Secretary of the Department of Health and Human Services ("HHS")] has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

On its face, the Act seems to be relevant here. There appears to be no dispute that PPE constitutes a "covered countermeasure" under the PREP Act. Nor does Plaintiff dispute Defendant's contention that it is a "covered person," defined for purposes of the PREP Act as "a person or entity that is (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv)." 42 U.S.C. § 247d-6d(i)(2)(B). And the Secretary of HHS issued the required declaration on March 10, 2020 in response to the COVID-19 pandemic.[2]

PREP Act immunity "applies to any claim for loss that has a *causal relationship* with the administration to or use by an individual of a covered countermeasure." *Id*. § 247d-6d(a)(2)(B) (emphasis added). The Act provides an exception to immunity when a plaintiff alleges that death or serious physical injury was proximately caused by "willful misconduct" on the part of a covered person. *Id.* § 247d-6d(d)(1); *see also* § 247d-6d(c) (defining willful misconduct). The U.S. District Court for the District of Columbia has exclusive federal jurisdiction of these willful misconduct suits, and plaintiff must exhaust administrative remedies before filing suit. *Id*. § 247d-6d(e)(1), 247d-6e(d)(1). For cases not involving willful misconduct, the Act establishes a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered injuries *directly caused by* the administration or use of a covered countermeasure." *Id*. § 247d-6e(a) (emphasis added). The Act also contains an express preemption provision, which preempts

---

[2] *See* Decl. Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020). That declaration has been amended several times, most recently in September 2021. *See* Ninth Amended Decl., 86 Fed. Reg. 51,160 (Sept. 14, 2021).

state laws that are "different from, or [ ] in conflict with, any requirement applicable under this section" and "relate[ ] to the design, development, clinical testing or investigation . . . [or] any other aspect of safety or efficacy" during a public health emergency. *Id*. § 247d-6d(b)(8).[3]

Defendant reads the PREP Act as a complete preemption statute, such that Plaintiff's claims arise under federal law. Without reaching the preemption question, however, the court concludes that the PREP Act does not apply to the conduct alleged in the Complaint at all. Multiple district courts have observed that "for the PREP Act to apply, there must be a causal link between the [covered person's] *use* of covered countermeasures and the injury the plaintiff sustained." *Ruiz v. ConAgra Foods Packaged Foods, LLC*, No. 21-CV-387-SCD, 2021 WL 3056275, at *4 (E.D. Wis. July 20, 2021) (emphasis added); *see also Brown v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1196, 1206 (D. Kan. 2020). This court agrees that the PREP Act was clearly "designed to protect those who employ countermeasures, not those who decline to employ them." *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 531 (D.N.J. 2020), *aff'd sub nom. Maglioli v. All. HC Holdings LLC*, ___ F.4th ___, No. 20-2833, 2021 WL 4890189 (3d Cir. Oct. 20, 2021); *accord Rodina v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2319-HLT-JPO, 2020 WL 4815102, at *5–6 (D. Kan. Aug. 19, 2020). In other words, although the PREP Act may apply to misfeasance, meaning the improper administration or use of covered countermeasures, it does not directly provide a defense to a claim of nonfeasance, or the failure to use such countermeasures.[4]

---

[3] Notably, the express preemption provision applies only "[d]uring the effective period of [the Secretary's declaration] or at any time with respect to conduct undertaken in accordance with such declaration." 42 U.S.C. § § 247d-6d(b)(8).

[4] The Secretary's Fourth Amended Declaration states: "Where there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under [the PREP Act]." 85 Fed. Reg. 79,190, 79,197 (Dec. 9, 2020) (emphasis added). Setting aside the degree of deference that this interpretation warrants, this court agrees with other courts that the Fourth Amended Declaration does not alter the analysis of complaints lacking such allegations. *See Anson v. HCP Prairie Vill. KS OPCO LLC*, 523 F. Supp. 3d 1288, 1299–1300 (D. Kan. 2021) (concluding that although "an 'inaction claim' is not necessarily beyond

Plaintiff in this case alleges that Defendant's failure to take preventative measures to mitigate the spread of COVID-19 caused Pomian's death. (*See, e.g.*, Compl. ¶¶ 94–107; Pl.'s Mem. [14] at 9.) Plaintiff is not alleging, by contrast, that Tower Hill administered the incorrect dosage of a vaccine or improperly used a ventilator. This court therefore joins the overwhelming weight of authority in concluding that the PREP Act does not address state-law claims based on a failure to deploy countermeasures, and therefore the Act cannot completely preempt such suits. *See, e.g.*, *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1286–87 (C.D. Cal. 2021); *Dupervil v. Alliance Health Operations, LCC*, 516 F. Supp. 3d 238, 254–55 (E.D.N.Y. 2021); *Anson v. HCP Prairie Vill. KS OPCO LLC*, 523 F. Supp. 3d 1288, 1300–01 (D. Kan. 2021); *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184, 1192–95 (D. Kan. 2020); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *7–8 (W.D. Pa. Oct. 16, 2020), *appeal filed*, No. 20-3287 (3d Cir. Nov. 10, 2020); *Estate of Jones v. St. Jude Operating Co., LLC*, No. 3:20-CV-01088-SB, 2020 WL 8361924, at *9–10 (D. Or. Oct. 14, 2020); *cf. Parker ex rel. Parker v. St. Jude Operating Co.*, No. 3:20-CV-01325-HZ, 2020 WL 8362407, at *4–6 (D. Or. Dec. 28, 2020) (concluding that the PREP Act could apply to the alleged misuse of PPE, but remanding because the PREP Act does not satisfy the Ninth Circuit's test for complete preemption).

In a transparent attempt to evade these precedents, Defendant mischaracterizes Plaintiff's Complaint as alleging misconduct "in the manner in which [Tower Hill] allocated and implemented countermeasures." (Def.'s Opp'n [19] at 3.) For support, Defendant points to allegations in the Complaint that Tower Hill: (1) "failed to purchase, provide, and/or monitor the number of PPE

---

the scope of the PREP Act," "this possibility does not upend the distinction between action and inaction"); *Dupervil v. Alliance Health Operations, LCC*, 516 F. Supp. 3d 238, 255 (E.D.N.Y. 2021) (concluding that the PREP Act did not apply to allegations of inaction "even accepting the Secretary's recent interpretation that 'administration to' an individual can include '[p]rioritization or purposeful allocation' of a covered countermeasure") (citations omitted); *see also Rodina*, 2020 WL 4815102, at *7 (noting that use of covered countermeasures "somewhere in the facility" does not mean the PREP Act applies to "all claims that arise in that facility").

7

available to its employees and staff," (2) "allowed and encouraged the nursing staff to provide care to a number of different residents, including Regina, without adequate numbers, qualities, and/or sanitized PPE," and (3) "[f]ailed to purchase, provide, maintain, monitor and/or employ adequate PPE." (*Id*. (quoting Compl. ¶¶ 125, 126, 142(q) (emphasis omitted).)  Defendant seizes on words like "adequate" and "number of" to construe the Complaint as alleging misallocation of countermeasures, namely PPE, that were nonetheless "administ[ered]" or "use[d]." 42 U.S.C. § 247d-6d(a)(1).  In an apparent effort to bolster the argument, Defendant also attempts to supplement the Complaint with its own facts, particularly that "there was a scarcity of PPE in this country" at the time of Pomian's death.  (Def.'s Opp'n at 14; *see id*. at 15 n.3 (citing numerous online sources).)  Such evidence may well be relevant to a defense on the merits, but a defendant may not manufacture federal jurisdiction by reading its preferred set of facts into the Complaint. *See Caterpillar*, 482 U.S. at 396–97.  Other courts have rejected similar attempts to distort state-law complaints to invoke PREP Act immunity.  *See, e.g.*, *Anson*, 523 F. Supp. 3d at 1300 ("Defendants try their best to contort plaintiff's allegations of inaction into action," but "[t]heir mental gymnastics stretch these allegations well beyond all measure of reasonable flexibility."); *Eaton*, 480 F. Supp. 3d at 1194 ("To the extent Defendants want to argue that the PREP Act applies, they must do so based on the complaint as it is—not as Defendants would prefer it to be.").  The court concludes that Plaintiff's Complaint is more fairly read as alleging the nonuse of countermeasures, and therefore the PREP Act does not apply.

Defendant relies heavily on a single district court case reaching the opposite conclusion: *Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734 (C.D. Cal. 2021).[5]  In *Garcia*, plaintiffs similarly alleged that a nursing home "failed to implement appropriate infection control measures"

---

[5] Defendant also points to a state-court decision holding that the PREP Act preempted the plaintiff's state-law claims for negligence and battery.  *See Parker v. St. Lawrence Cnty Pub. Health. Dep't*, 954 N.Y.S.2d 259, 259 (N.Y. App. Div. 2012).  But *Parker* is factually distinguishable because it involved the administration of a vaccine to a student without parental consent.  *Id*.  This case, by contrast, involves the failure to administer countermeasures.

8

to prevent the spread of COVID-19, resulting in a resident's death from the virus. *Id*. at 737. In addressing the propriety of removal of plaintiffs' state court complaint, the court accorded deference to a January 8, 2021 Advisory Opinion from the HHS Office of General Counsel ("AO 21-01"), which suggested that the PREP Act is a complete preemption statute and urged a broader interpretation of what constitutes use of countermeasures. *Id*. at 742–43 (citing *Chevron, Inc. v. NDRC, Inc.*, 467 U.S. 837, 843 (1984), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001)). Under that interpretation, the court determined that the PREP Act is a complete preemption statute, and that it applied to bar plaintiffs' claims of inaction. *Id.* at 742–45. Only one court appears to have followed *Garcia*'s lead in deferring to HHS's interpretation of the PREP Act.[6] *See Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 12-CV-00334, 2021 U.S. Dist. LEXIS 105847, *3 n.3, 11–14 (W.D. La. Apr. 30, 2021) (concluding that the PREP Act is a complete preemption statute and giving deference to the agency's broader interpretation of covered countermeasures). But the widespread response to *Garcia*'s reasoning has been negative. *See, e.g.*, *Martin v. Petersen Health Ops., LLC*, No. 1:20-CV-1449, 2021 WL 4313604, at *9–10 (C.D. Ill. Sept. 22, 2021) (collecting cases rejecting *Garcia*); *Leroy v. Hume*, ___ F. Supp. 3d ___, No. 20-CV-5325 (ARR) (CLP), 2021 WL 3560876, at *6–7 (E.D.N.Y. Aug. 12, 2021) (same).

Like the defendants in *Garcia*, Tower Hill argues that AO 21-01 is entitled to *Chevron* deference. Specifically, in AO 21-01, the HHS General Counsel disagreed with district courts that have found the PREP Act does not apply to allegations of nonuse of a covered countermeasure. (AO 21-01, Ex. 1 to Def.'s Opp'n [19-1] at 3 ("[T]his 'black and white' view clashes with the plain

---

[6] As discussed in further detail below, the Third Circuit recently concluded that the PREP Act's narrow cause of action for willful misconduct could completely preempt some state-law claims. *See Maglioli*, 2021 WL 4890189, at *9. But the court still rejected deference to HHS's interpretation that the PREP Act completely preempts state law or raises a substantial federal interest under *Grable*, because Congress did not delegate authority to interpret "the scope of federal courts' jurisdiction." *Id.* at *4. The Third Circuit did not consider HHS's broader interpretation of the use (or nonuse) of covered countermeasures.

9

language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure.")) The General Counsel offered a hypothetical in which only a single dose of vaccine is available, and a healthcare professional must decide whether to administer it to a person in a vulnerable population or a person in a less vulnerable population. In that situation, "[p]rioritization or purposeful allocation of a Covered Countermeasure . . . can fall within the PREP Act and this Declaration's liability protections." (*Id.*) The General Counsel conceded, however, that "the failure to purchase any PPE, if not the outcome of some form of decision-making process[,] may not be sufficient to trigger the PREP Act." (*Id.*)

This court concludes that AO 21-01 is not entitled to *Chevron* deference and does not require the conclusion that the PREP Act preempts Plaintiff's claims here. As the Supreme Court explained in *Mead*, *Chevron* deference applies only when "it appears that Congress delegated authority to the agency generally to make rules *carrying the force of law*, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226–27 (emphasis added). For example, administrative adjudications and notice-and-comment rulemaking carry the force of law, and therefore are entitled to *Chevron* deference. *Id*. at 227. By contrast, opinion letters from federal agencies are not entitled to *Chevron* deference. *See Graham v. Bd. of Educ.*, 8 F.4th 625, 628 (7th Cir. 2021). At most, such materials are "entitled to respect" to the extent that they have the "power to persuade." *Skidmore*, 323 U.S. at 140. As other courts have observed, AO 21-01 itself disclaims that it has "the force or effect of law." (AO 21-01 at 5.) *See Dupervil*, 516 F. Supp. 3d at 252; *Leroy*, 2021 WL 3560876, at * 5. The court concludes that AO 21-01 is not entitled to *Chevron* deference, and further determines that its reasoning is unpersuasive for the reasons stated earlier.[7]

---

[7] Defendant's related argument that "Congress intended the Secretary's declarations [pursuant to the PREP Act] to have the force of law"—for purposes of *Chevron* and *Mead*—is borderline frivolous. (Def.'s Opp'n at 19 (citing 42 U.S.C. § 247d-6d(b)(7)).) The PREP Act states: "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection." 42 U.S.C. § 247d-6d(b)(7). In the context of § 247d-6d(b) ("Declaration by Secretary"), this

Next, Defendant argues that the PREP Act preempts claims for failure to use covered countermeasures by analogizing to the ERISA context. Defendant notes that courts have interpreted the words "relates to" in ERISA as applying broadly to claims where there is "a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). In *Bartholet v. Reishauer A.G.*, for instance, the Seventh Circuit held that ERISA preempted a contract claim for failure to provide a promised pension plan, where the employer's plan was not as generous as the employee had expected. 953 F.2d 1073, 1076–77 (7th Cir. 1992). Section 502(a)(1)(B) of ERISA is indeed a complete preemption statute, *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–67 (1987), but Defendant does not otherwise explain why the PREP Act should be interpreted similarly, and has not cited authority for such an analogy. Defendant also fails to explain why this court should look to the National Childhood Vaccine Injury Act, which the Supreme Court held preempts design-defect claims by plaintiffs seeking compensation for death or injury from vaccine-related side effects against vaccine manufacturers. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 243 (2011). As best this court can tell, the Supreme Court's decision was limited to ordinary preemption, not complete preemption for purposes of removal.

Other courts have similarly rejected Defendant's attempt to compare the PREP Act to the Air Transportation Safety and System Stability Act ("ATSSSA"). *See Dupervil*, 516 F. Supp. 3d at 253–54; *Leroy*, 2021 WL 3560876, at * 5; *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, ___ F. Supp. 3d ___, No. 3:20-cv-00683, 2021 WL 1561306, at *7 (M.D. Tenn. Apr. 21, 2021). The Second Circuit has recognized the ATSSSA as a complete preemption statue. *In re WTC Disaster Site*, 414 F.3d 352, 375–80 (2d Cir. 2005). That statute created a "Victim Compensation Fund to provide relief, without litigation, to individuals (or relatives of deceased individuals)

---

provision clearly means that the Secretary's decision to declare a public health emergency is insulated from judicial review, not that the Secretary's interpretation of the PREP Act has the force of law.

physically injured or killed as a result of the September 11 aircraft crashes[.]" *Id.* at 373 (citing ATSSSA §§ 403, 405). Alternatively, the ATSSSA provides a federal cause of action for damages, with exclusive jurisdiction in the Southern District of New York. *See* ATSSSA § 408. The PREP Act, like the ATSSSA, creates a compensation fund known as the Covered Countermeasure Process Fund. *See* 42 U.S.C. § 247d-6e(a). But unlike the ATSSSA, the PREP Act's federal cause of action is limited to claims involving "willful misconduct." *See* 42 U.S.C. § 247d-6d(d)(1). In the absence of willful misconduct, the Covered Countermeasures Process Fund—a federal administrative remedy—is the only recourse for claimants because covered persons are immune from suit. *See id*. § 247d-6d(a). The lack of a federal cause of action for many claims involving the use or administration of covered countermeasures strongly suggests that the PREP Act is not a complete preemption statute. *See Rogers*, 308 F.3d at 790 (explaining that complete preemption only exists where "the federal statute provides a private right of action").

As noted earlier, the Third Circuit—the first and only court of appeals to consider the issue—recently concluded that the PREP Act completely preempts at least some state-law claims that could have been brought under the Act's cause of action for willful misconduct.[8] *See Maglioli*, 2021 WL 4890189, at *9. In so holding, however, the Third Circuit also recognized the "narrowness of the PREP Act's cause of action," distinguishing it from the ATSSSA's general and expansive "remedy for damages." *Id.* at 11 (quoting ATSSSA § 408(b)(1)). Unlike the ATSSSA, therefore, the PREP Act does not "make state-law negligence claims removable to federal court." *Id.* The *Maglioli* plaintiffs, who alleged that the defendant nursing homes failed to use countermeasures, brought only negligence claims, not willful misconduct claims. *Id.* at *2, 10. Focusing on these claims' different legal elements, the court held that the plaintiffs' negligence

---

[8] In the ERISA context, a state-law claim is only completely preempted if (1) plaintiff could have brought her claim under the federal cause of action and (2) no other independent legal duty supports her claim. *Maglioli*, 2021 WL 4890189, at *9 n.11. Because the Third Circuit concluded that the *Maglioli* plaintiffs failed at step one, it did not determine whether the second requirement (no independent legal duty) applies in the PREP Act context. *See id.*

claims could not have been brought under the PREP Act's willful misconduct cause of action. *Id.* at *10. Thus, the Third Circuit did not reach the dispositive issue in this case: whether a claim of failure to use covered countermeasures (negligent or willful) is preempted by the PREP Act.[9]

In any event, because this court concludes that the PREP Act does not apply to the Complaint's allegations of inaction, the court need not determine whether the Act would completely preempt claims to which it does apply. *See, e.g.*, *Eaton*, 480 F. Supp. 3d at 1192 (declining to reach complete preemption where the PREP Act did not apply to plaintiff's allegations). The court emphasizes, however, that it makes no judgment as to whether Plaintiff's allegations suffice to state a claim under Illinois law; it is simply that these allegations do not turn his state-law claims into federal ones.

### B. State Law Claims Presenting Substantial Federal Issue

In the alternative, Defendant argues that the Complaint raises a substantial federal issue such that removal is proper. In "a special and small category of cases," *Gunn v. Minton*, 568 U.S. 251, 258 (2013), federal-question jurisdiction exists over state-law claims if those claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state juridical responsibilities." *Grable*, 545 U.S. at 314; *see also Smith v. Kan. City Title & Trust Co.*, 255 U.S. 180, 199 (1921). For example, in *Grable*, the Supreme Court held that a state-law action to quiet title in land necessarily raised a substantial and disputed federal issue, because the outcome depended on whether the Internal Revenue Service had given a landowner adequate notice of its sale of the property under federal law. 545 U.S. at 314–15. "The doctrine captures

---

[9] Plaintiff brings several claims alleging "willful and wanton" misconduct, but argues in reply that these were included as "an alternative pleading to the negligence standard in the [INHCA] because Illinois Governor J.B. Pritzker issued executive orders of dubious validity that immunized health-care providers during the current pandemic except to the extent that liability satisfied a gross negligence or wanton misconduct standard." (Pl.'s Reply [20] at 1–2.) Because these claims are based on the same facts as Plaintiff's negligence claims—failure to deploy countermeasures—the court concludes that these claims, too, are not preempted by the PREP Act.

the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (quoting *Grable*, 545 U.S. at 312).

In light of this court's conclusion that the PREP Act does not apply to Plaintiff's claims, it should be unsurprising that the court also concludes that those claims do not raise a substantial federal issue for purposes of removal jurisdiction. Defendant's arguments to the contrary are not persuasive. Tower Hill points once more to AO 21-01, where the HHS General Counsel argued that *Grable* supports removal of lawsuits involving the failure to use covered countermeasures, at least in some circumstances. (*See* AO 21-01 at 5 ("[O]rdaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court.").) The court again rejects the notion that AO 21-01 is entitled to *Chevron* deference. To the extent that AO 21-01 has persuasive authority, *Skidmore*, 323 U.S. at 140, the court does not find it persuasive in this context. Had Plaintiff actually alleged misconduct on the basis of Tower Hill's conscious allocation of a limited supply of PPE, for example, the court might find AO 21-01 more relevant.

Similarly, the court is not moved by Defendant's argument that the court should defer to the Justice Department's statement of interest in *Bolton*, 2021 WL 1561306, at *7, a case involving similar allegations of failure to mitigate the spread of COVID-19 in a nursing home. The Justice Department argued that "the United States has an interest in having the PREP Act uniformly applied across jurisdictions and across public health emergencies." (DOJ Statement of Interest, Ex. B. to Def.'s Opp'n [19-1] at 2.) But as explained above, the PREP Act does not apply to the allegations in Plaintiff's Complaint, so uniformity of application is not a significant interest. Indeed, in its *Bolton* filing, the Justice Department noted that it "takes no position as to whether the Act applies to any particular claim alleged in Plaintiff's Complaint in this case." (*Id*. at 13.) The district

14

court in *Bolton* agreed with this court's interpretation of the statement, concluding that the "Statement of Interest is best characterized as that: a statement of interest." *Bolton*, 2021 WL 1561306, at *7 n.8.

Moreover, because PREP Act immunity is only an affirmative defense, the *Bolton* court concluded that "no embedded federal issue exists because [it] could ignore entirely the PREP Act in determining whether [the plaintiff] established prima facie state-law claims for gross negligence and recklessness." *Bolton*, 2021 WL 1561306, at *4; *accord Maglioli*, 2021 WL 4890189, at *12 (explaining that because plaintiffs could "properly plead their state-law negligence claims without mentioning the PREP Act," the Act is not an essential element under *Grable*). The court draws no conclusions as to whether Defendant may raise PREP Act immunity as an affirmative defense to Plaintiff's claims in state court. But this possibility is not enough to bring the case into federal court under § 1441. *See Caterpillar*, 482 U.S. at 398 ("The fact that a defendant might ultimately prove [its affirmative defense] that a plaintiff's claims are pre-empted under [a federal statute] does not establish that [those claims] are removable to federal court.").

## II. Federal Officer Removal

Defendant asserted the federal officer removal statute as an alternative argument for removal jurisdiction in its removal papers (Notice of Removal ¶¶ 19–43) but did not address the argument in response to Plaintiff's motion to remand. In any event, the court concludes that argument lacks merit. That statute permits "any officer (or any person acting under that officer) of the United Sates" to remove actions "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To invoke the federal officer removal statute, a private defendant must establish that it: "(1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020). Companies may be "persons" under § 1442(a). *Id.* But as the Supreme Court has explained:

> A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007).

As this language confirms, Defendant was not "acting under" a federal government official when it engaged in the conduct alleged in the Complaint. Tower Hill is not a federal contractor, nor does it purport to be one in its brief. *Cf. Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812–13 (3d Cir. 2016) (holding that Boeing was "acting under" the federal government when it manufactured a military cargo plane pursuant to a federal contract). Rather, Defendant operates a nursing home. Nursing homes are highly regulated, and CMS and the CDC have issued a variety of guidelines for nursing homes in response to the COVID-19 pandemic. But the presence of federal guidelines and regulations does not mean that all participants in an industry may invoke the federal officer removal statute. *See Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808 (7th Cir. 2015) (holding that Boeing was not "acting under" the Federal Aviation Administration, even though the FAA had allowed Boeing to self-certify the airworthiness of its planes, because "all businesses must ensure that they comply with statutes and regulations"). Nursing home regulations are not enough to bring Defendant into federal court under § 1442(a), a conclusion which the Third Circuit and other district courts have also reached. *See Maglioi*, 2021 WL 4890189, at *5–6; *see, e.g.*, *Dupervil*, 516 F. Supp. 3d at 260–61 (collecting cases); *Lyons*, 520 F. Supp. 3d at 1283–84.[10]

---

[10] The Supreme Court's recent decision in *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021), does not alter this analysis. In considering federal officer removal in the context of interlocutory review of a district court's remand order, the Court held that 28 U.S.C. § 1447(d) permits a court of appeals to review the entire remand order, not merely the portion of the order concerning the basis for federal officer removal. *Id*. at 1537–38. The decision did not consider the meaning of "acting under" for purposes of § 1442(a).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand [13] is granted. The Clerk is directed to remand this case to the Circuit Court of Kane County.

ENTER:

Dated: November 1, 2021

_____
REBECCA R. PALLMEYER
United States District Judge